**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| BRUCE E. VOID, Plaintiff, | ) | |
| v. | ) | Civil Action No. 16-78 (RC) |
| J. PATRICIA WILSON SMOOT, *et al.*, Defendants. | ) | |

# **MEMORANDUM OPINION**

This matter is before the court on Defendants' Motion to Dismiss, ECF No. 9.[1] For the reasons discussed below, the motion will be granted.

## I. BACKGROUND

### *A. Parole for D.C. Code Felony Offenders*

At all times relevant to the Complaint, the Superior Court of the District of Columbia imposed on an offender an indeterminate sentence "for a maximum period not exceeding the maximum fixed by law, and for a minimum period not exceeding one-third of the maximum sentence imposed." D.C. Code § 24-403(a). "[A]ny person so convicted and sentenced *may be released on parole . . . at any time after having served the minimum sentence*." *Id*. (emphasis added). Under District of Columbia law, parole may be granted when it appears that "there is a

[1] Also before the court is the Motion of Plaintiff for Partial Summary Judgment on his Ex Post Facto Claim, ECF No. 15. Plaintiff's motion raises the same claims and makes the same arguments, albeit in greater length, as he presents in the complaint. The court grants defendants' Motion for Entry of an Order, ECF No. 16, and deems Defendants' Motion to Dismiss, ECF No. 9, and Defendants' Reply to Plaintiff's Opposition to Defendants' Motion to Dismiss, ECF No. 13, responsive to the motion. Plaintiff's motion will be denied.

reasonable probability that a prisoner will live and remain at liberty without violating the law, that his . . . release is not incompatible with the welfare of society, and that he . . . has served the minimum sentence imposed or the prescribed portion of his . . . sentence, as the case may be[.]" D.C. Code § 24-404(a) (formerly codified at D.C. Code § 24-204(a) (1989)). The United States Parole Commission ("USPC") now has the authority to grant, deny, impose or modify conditions of, and revoke parole for District of Columbia Code felony offenders. D.C. Code § 24-131(a); *see Franklin v. District of Columbia*, 163 F. 3d 625, 632 (D.C. Cir. 1998) (discussing transfer of parole authority from former District of Columbia Board of Parole to USPC).

*B. The 1987 Regulations*

For offenders such as plaintiff who committed offenses in 1987 and 1989, the USPC applies guidelines "promulgated in 1985, *see* 32 D.C. Reg. 940 (Feb. 15, 1985)," which have become known "as the 1987 [R]egulations because of their year of publication[.]" *Phillips v. Fulwood*, 616 F.3d 577, 580 n.2 (D.C. Cir. 2010). There are "criteria consist[ing] of pre[-] and post-incarceration factors which enable[ the USPC] to exercise its discretion when, and only when, release is not incompatible with the safety of the community." 28 D.C.M.R. § 204.1.

First, the 1987 Regulations call for the calculation of a salient factor score ("SFS"), 28 D.C.M.R. § 204.2, described as "an actuarial parole prognosis aid to assess the degree of risk posed by a parolee," 28 D.C.M.R. § 204.3. To calculate the SFS, the USPC considers six pre-incarceration factors: (1) prior convictions and adjudications (Item A); (2) prior commitments of more than 30 days (Item B); (3) age at the commission of current offense (Item C); (4) recent commitment-free period (Item D); (5) the offender's status (e.g., as a parolee or probationer) at time of current offense (Item E); and (6) a history of heroin or opiate dependence (Item F). *See* 28 D.C.M.R. §§ 204.4-204.16. Then it assigns a numerical value to each factor. *See* 28

D.C.M.R. § 201 app. 2-1 (SALIENT FACTOR SCORE).  With respect to the first factor, and with exceptions not relevant here, the USPC counts "[a]ll convictions . . . for criminal offenses . . . other than the current offense."  28 D.C.M.R. § 204.5(a).

"The SFS placed the candidate into one of four risk categories (10-9 = low risk, 8-6 = fair risk, 5-4 = moderate risk, or 3-0 = high risk) from which the [USPC] determines a baseline number of points ('base point score') that provided 0 for low risk, 1 for fair risk, 2 for moderate risk, and 3 for high risk."  *Sellmon v. Reilly*, 551 F. Supp. 2d 70 (D.D.C. 2008); *see* 28 D.C.M.R. § 204.17 & app. 2-1 (POINT ASSIGNMENT GRID ADULT OFFENDERS).  "The [USPC takes] the base point score and adjust[s] it using the remaining pre-incarceration factor and . . . two-post incarceration factors to arrive at the Point Assignment Grid Score ('total point score')."  *Sellmon*, 551 F. Supp. 2d. at 70.

The remaining pre-incarceration factors assess the type of risk the candidate poses.  *Id.*; *see* 28 D.C.M.R. § 204.18(a)-(g).  If the candidate's current offense or a past conviction involved a felony causing death or serious bodily injury, a felony in which the candidate used a dangerous weapon, or a felony conviction for distribution or intent to distribute illegal drugs, one point (+1) is added to the candidate's base point score.  *See* 28 D.C.M.R. § 204 app. 2-1 (TYPE OF RISK ASSESSMENT and POINT ASSIGNMENT GRID ADULT OFFENDERS).

The post-incarceration factors are the candidate's institutional behavior and sustained program achievement.  *See* 28 D.C.M.R. § 204.18(h)-(i).  The USPC may add one point to a candidate's base point score (+1) if he committed serious disciplinary infractions, and it may subtract one point from the candidate's base point score (-1) if the "offender demonstrated sustained achievement in the area of prison programs, industries, or work assignments during this period of incarceration."  28 D.C.M.R. § 204 app. 2-1 (Post-Incarceration Factors).

If the candidate's total point score is zero, one or two, the 1987 Regulations provide that "[p]arole shall be granted at the initial hearing" with an appropriate level of supervision. 28 D.C.M.R. § 204.19(a)-(c). If the candidate's total point score is three, four or five, parole was to be "denied at initial hearing and rehearing scheduled." 28 D.C.M.R. § 204.19(d). On rehearing, the USPC takes the candidate's "total point score from the initial hearing and adjust[ed] that score according to the institutional record of the candidate since the last hearing[.]" 28 D.C.M.R. § 204.21. If the candidate's score on rehearing is zero, one, two or three, parole ordinarily is granted at the appropriate level of supervision. 28 D.C.M.R. § 204.21(a); *see* 28 D.C.M.R. § 204 app. 2-2 (POINT GRID FOR PAROLE REHEARINGS). If the candidate's score is four or five, parole is "denied and a rehearing date scheduled." 28 D.C.M.R. § 204.21(b).

The 1987 Regulations provide that the USPC could, "in unusual circumstances, waive the SFS and the pre[-] and post-incarceration factors . . . to grant or deny parole to a parole candidate." 28 D.C.M.R. § 204.22. For example, if the candidate repeatedly had failed under parole supervision, had a history of repetitive sophisticated criminal behavior, had an unusually extensive and serious prior record, had displayed unusual cruelty to victims, or had "[r]epeated or [e]xtremely [s]erious [n]egative [i]nstitutional [b]ehavior," the USPC could deny parole. 28 D.C.M.R. § 204, app. 2-1 (DECISION WORKSHEET: INITIAL HEARINGS for WORSE RISK). If the candidate's criminal record resulted exclusively from trivial offenses or if he showed exceptional achievement in educational or vocational programs while incarcerated, the USPC could find him a better risk than application of the 1987 Regulations would suggest and thus could parole. 28 D.C.M.R. § 204, app. 2-1 (DECISION WORKSHEET: INITIAL HEARINGS for BETTER RISK). In these circumstances, the USPC is required to "specify in

writing those factors which it used to depart from the strict application" of the 1987 Regulations. 28 D.C.M.R. § 204.22.

*C. Plaintiff's Criminal History*

On September 9, 1991, the Superior Court of the District of Columbia sentenced plaintiff to a term of 20 years to life imprisonment for first degree murder while armed, and a consecutive term of three to nine years imprisonment for conspiracy. *See* Mot. of Pl. for Partial Summ. J. on his Ex Post Facto Claim, ECF No. 15 ("Pl.'s Mot."), Ex. 3 (Judgment and Commitment Order, *United States v. Void*, No. F 10343-90 (D.C. Super. Ct. Sept. 6. 1991)). The conspiracy conviction pertained to plaintiff's distribution and possession with intent to distribute PCP and cocaine in or about November 1987. *See id.*, Ex. 1 (DC Board of Parole Guideline Prehearing Assessment dated December 6, 2011) at 1. The murder conviction was not the plaintiff's first – he had been "previously convicted of a Murder (Conspiracy After the [F]act) in Prince George's County, Maryland[,] and sentenced to a term of 5 years" imprisonment.[2] *Id*., Ex. 2 (Hearing Summary dated December 12, 2011) at 3. In addition, plaintiff had been convicted of robbery in 1989. *See id*., Ex. 1 at 2.

*D. Plaintiff's Parole Hearings*

Plaintiff became eligible for parole on the D.C. sentences on September 28, 2012, *see id*., Ex.1 at 1, and his initial parole hearing took place on December 12, 2011, *see id*., Ex. 2 at 1. The hearing examiner described the circumstances of the murder as follows:

---

[2] Plaintiff denied any involvement in the Maryland murder itself, however. He claimed that another person killed a convenience store employee during a robbery, informed plaintiff afterwards, "showed [plaintiff] the gun and money," and gave plaintiff "several hundred dollars in cash, which was taken during the robbery." Pl.'s Mot., Ex. 2 (Hearing Summary dated December 12, 2011) at 3.

> [Plaintiff] had known the [Tyrone Ricardo Carrington] for approximately 1 year, and . . . the victim was a cocaine dealer . . . . [According to plaintiff, he] only distributed PCP and [Carrington] sold cocaine . . . . [T]he incident stemmed from a dispute regarding stolen drug proceeds. Specifically, [plaintiff] stated that [Carrington] had entrusted him with [$25,000] to pay another drug dealer. The drug dealer subsequently informed [Carrington] that $5,000 was missing from the pay-off. [Plaintiff] denied stealing the money. [Carrington] (who had a reputation for settling disputes violently) confronted [plaintiff] and demanded that [plaintiff] repay the money. [Plaintiff] became fearful that [Carrington] was going to murder him and decided to kill [Carrington] first . . . .
>
> On the night of the murder [Carrington] . . . had been drinking at a local night club with [plaintiff]. After leaving the club [Carrington asked plaintiff] to accompany him to pick[] up some money. [Carrington] (who was driving a black [C]orvette) was accompanied by [plaintiff's co-defendant] who was in the passenger seat. [Plaintiff] (who was driving another vehicle) followed the victim's car. [Plaintiff] remained in his car, while [Carrington] entered a residence and retrieved his money. [Carrington] subsequently drove to another location with [plaintiff] following in another vehicle. When [Carrington] pulled down a side street and summoned [plaintiff] to his vehicle, [plaintiff] became nervous. After he walked over to [Carrington's] vehicle he observed a gun on the console. [Plaintiff] subsequently returned to his vehicle, retrieved his weapon, and shot [Carrington] once in the head.

*Id*., Ex. 2 at 2.

"The hearing examiner confronted [plaintiff] with the version [of events] provided in the Presentence Report" potentially connecting plaintiff to a burglary and two more murders which occurred shortly after Carrington's murder:

> [T]he ignition key to [Carrington's] vehicle was missing and following the murder, [Carrington's] residence was entered by an unknown assailant who murdered [Carrington's] 13-year old son and a 12-year old boy[] who was a house guest. Drugs and money were also stolen from the residence.

*Id*., Ex. 2 at 3. Plaintiff "emphatically denied any knowledge regarding who was involved in the murders of the children, and testified that when he left the scene [of Carrington's murder], the key was still in the ignition." *Id*.

Plaintiff's total point score was 1.[3] *See id*., Ex. 4 (Notice of Action dated July 26, 2012). Under the 1987 Regulations, plaintiff thus was presumptively eligible for parole. However, the hearing examiner deemed plaintiff a more serious risk than the guidelines suggested. *Id*., Ex. 2 at 4. She recommended that parole be denied and that plaintiff serve another 36 months in custody. *Id*., Ex. 2 at 4. The USPC concurred:

> You have a total point score of [1] under the 1987 Board guidelines for D.C. Code offenders. The guidelines indicate that parole should be granted at this time. However, a *departure from the guidelines* is found warranted because the [USPC] finds *there is a reasonable probability that you would not obey the law if released and your release would endanger the public safety*. You are a more serious parole risk than shown by your point score because of your *repetitive violent criminal history* suggests that you pose a serious risk to public safety. Specifically, your current conviction entailed you *shooting a man in the head*, who you believed posed a threat to your well being based upon his belief that you had stolen a large sum of money (drug proceeds) from him. In addition you were previously *convicted of Accessory to Murder After the Fact*, which involved the robbery and murder of a convenience store employee.
>
> The guidelines for the time to rehearing indicate that your next hearing should be scheduled within 12 months. A departure from the guidelines is found warranted for the same reasons provided above for denying parole.

*Id*., Ex. 4 (Notice of Action dated January 27, 2012) (emphasis added).

[3] The January 27, 2012 Notice of Action incorrectly stated that plaintiff's total point score was 2. The USPC corrected the error by making an adjustment (-1) for institutional program participation, resulting in a total point score of 1. Pl.'s Mot., Ex. 4 (Notice of Action dated July 26, 2012).

In anticipation of plaintiff's parole rehearing, a reviewer considered the opinion of the District of Columbia Court of Appeals, a copy of which had been placed in plaintiff's file, and identified "a number of contradictions with the decision and [plaintiff's] statements to the [hearing examiner] at his initial hearing." Notice of Filing Exhs. in Support of Defs.' Mot. to Dismiss ("Notice"), ECF No. 17, Ex. 1 (DC Board of Parole Guideline Rehearing dated April 24, 2015) at 3.[4] Generally, the contradictions identified by the reviewer suggested plaintiff's involvement in or knowledge of the murder of the two boys. *See id.*, Ex. 1 at 3-4.

Plaintiff's parole rehearing took place on June 4, 2015, and ultimately the USPC denied parole and continued the matter for rehearing in 2020 after plaintiff's service of 60 additional months in custody. Notice, Ex. 4 (Notice of Action dated July 7, 2015) at 1. Again, the USPC found plaintiff to be "a more serious parole risk than shown by [his] Grid Score [of zero]," and made an upward departure from the guidelines "for the same reasons identified in the Notice of Action dated [January 12, 2012]." *Id.*, Ex. 4 at 1. Further, the USPC referred to "the Appellate Brief by the D.C. Court of Appeals [that] provide[d] substantial new evidence of a connection between the murder of Tyrone Ricardo Carrington and the murders of Carrington's 12-year old son and a 13-year old boy who was spending the night" at the apartment:

> The connecting evidence includes the fact that the same gun used to kill Carrington was used to kill the boys. It was a .45 caliber weapon. Evidence reveals[] Carrington was shot two times in the head, once from the driver's side with a .45 caliber weapon, and once from the passenger side [by the co-defendant] with a .38 caliber weapon. At the hearing, you admitted you were standing outside the driver's door when you shot Carrington and your codefendant . . . was seated in the passenger side of [Carrington's] vehicle. Thus, the [USPC] concludes you fired the shot from the .45 caliber weapon from "the driver's side." Evidence reveals that this was the same

[4] None of the parties cites or submits a copy of the District of Columbia Court of Appeals opinion. This Court presumes that the parties are referring to *Void v. United States*, 631 A.2d 374 (D.C. 1993).

> weapon later used to murder the boys . . . some 45 minutes later. A call was made to the [apartment] from Carrington's mobile phone, 5 minutes after he was shot, and another call was made to the [apartment] 3 minutes after that from your mobile phone. There was no sign of forced entry into the [apartment] and all evidence suggests that the key to the apartment was used to gain entry . . . . The Appellate Court found the similarities in the [apartment killings] and Carrington's murder rendered highly likely the possibility that they were committed by the same person or persons. Drugs, money, and a 9mm firearm were stolen from the . . . apartment, which also increases the likelihood that the person or persons who committed the crime would have to [have] had knowledge of where the drugs, money, and gun were located within the apartment . . . . Furthermore, the same 9mm firearm (stolen from the . . . apartment on the night of the murders) was found one week later in [the co-defendant's] possession, as the two of you were sitting in your truck. The [USPC] finds this new substantial evidence greatly increases the likelihood that you either participated in the murders of the two boys, you were there, and/or you knew about it and, thereafter, aided and abetted the actual killer. This adds a significant new risk element that was not considered at your previous hearing and which is not adequately captured in your Grid Score.

*Id*., Ex. 4 at 1-2.

## II. DISCUSSION[5]

Defendants move to dismiss the complaint, *see generally* Mem. of P. & A. in Support of Defs.' Mot. to Dismiss ("Defs.' Mem.") at 6-10, and the Court treats the motion as one under Federal Rule of Civil Procedure 12(b)(6). Ordinarily, if the Court relies on materials outside the pleadings, it converts the motion to one for summary judgment. *See* Fed. R. Civ. P. 12(d). Here, plaintiff's complaint sets forth so few factual allegations that the Court necessarily relies on exhibits to which plaintiff refers in his complaint and on other exhibits submitted by the parties. The Court declines to convert defendants' motion to a summary judgment motion "simply

[5] Plaintiff demanded "$8,000,000 in damages and injunctive relief of release from prison," Compl. at 4, and subsequently withdrew these demands, *see* Pl.'s Opp'n at 2. Accordingly, the Court declines to address defendants' arguments that sovereign immunity bars plaintiff's claim for damages, *see* Defs.' Mem. at 6-7, and that plaintiff's sole remedy for release from custody is through a petition for a writ of habeas corpus, *see id*. at 9-11.

because it refers to materials outside the pleadings" where, as here, the materials are attached to the parties' motions, "are referred to in the complaint, and are central to plaintiff['s] claims." *Krooth & Altman v. N. Am. Life Assur. Co.*, 134 F. Supp. 2d 96, 99 (D.D.C. 2001); *see Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (holding that "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document").

A plaintiff's complaint need only provide a "short and plain statement of [his] claim showing that [he] is entitled to relief," Fed. R. Civ. P. 8(a)(2), that '"give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests,'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A Rule 12(b)(6) motion tests the legal sufficiency of a complaint[.]" *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). In other words, it "must 'plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Patton Boggs LLP v. Chevron Corp.*, 683 F.3d 397, 403 (D.C. Cir. 2012) (citing *Iqbal*, 556 U.S. at 678)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not shown -- that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (brackets and internal quotation marks removed).

Plaintiff brings this action against the USPC's Chair and its Commissioners. *See* Compl. at 1. He alleges that defendants "applied [the USPC's] own guidelines and practices in violation

of the Ex Post Facto Clause of the U.S. Constitution," *id*., and rendered an "arbitrary and capricious" decision, *id*. at 2, based on alleged conduct outside of the record before them for which he has not been charged or convicted, *see id*. at 2-3. Further, plaintiff faults defendants for having departed from the guidelines based "on the same factors that went into formulating the [salient factor score] in the first place," *id*. at 2, and "on punitive considerations," *id*. at 3. Lastly, plaintiff contends, the denial of parole "reflects an abuse of discretion" by continuing his "confinement beyond the guidelines without the statutorily required good cause." *Id*. Plaintiff asks this Court to "enter an injunction against the USPC to stop it from using its own guidelines and practices contrary to District of Columbia law[.]" *Id*. at 4.

*A. Ex Post Facto Claim*

The United States Constitution prohibits any State from passing an "ex post facto Law." U.S. Const. art. 1, § 9, cl.3. The clause "is aimed at laws that 'retroactively alter the definition of crimes or increase the punishment for criminal acts.'" *Cal. Dep't of Corr. v. Morales*, 514 U.S. 499, 504 (1995) (quoting *Collins v. Youngblood*, 497 U.S. 31, 43 (1990)). "Retroactive changes in laws governing parole of prisoners, in some instances, may be violative of this precept." *Garner v. Jones*, 529 U.S. 244, 250 (2000). "Under *Garner*, a retroactively applied parole or reparole regulation or guideline violates the Ex Post Facto Clause if it 'creates a significant risk of prolonging [an inmate's] incarceration.'" *Fletcher v. Reilly*, 433 F.3d 867, 877 (D.C. Cir. 2006) (quoting *Garner*, 529 U.S. at 251). Defendants move to dismiss on the ground that his complaint fails to state a prima facie ex post facto claim. *See* Defs.' Mem. at 7-8. They argue that plaintiff "has not made any particularized allegations or showings," such as a showing "that he is at risk of suffering enhanced punishment due to the USPC's retroactive application of a law or regulation." *Id*. at 8. The Court concurs.

Here, plaintiff hints at, but does not articulate, a claim that defendants violated the ex post facto clause by retroactively applying the wrong set of parole guidelines. *See* Compl. at 1 (referring to the USPC's "own guidelines and practices"); Pl.'s Reply to Def.'s Mot. to Dismiss, ECF No. 11 ("Pl.'s Opp'n") at 7-8 (discussing "Federal Guidelines"). Notwithstanding plaintiff's purported reliance on *Sellmon*, where the retroactive application of the USPC's 2000 Guidelines may give rise to an ex post facto claim, *see generally id*. at 87-89 (discussing differences between the 2000 Guidelines and the 1987 Regulations), his claim bears no resemblance to that of the *Sellmon* plaintiffs. There is nothing in the record of this case to support the notion that defendants applied any parole guidelines other than the 1987 Regulations, which plaintiff himself demands be applied to him. *See, e.g.*, Pl.'s Opp'n at 7-8. Rather, plaintiff objects to the result defendants reached based on their application of the 1987 Regulations, particularly the upward departure, upon their findings of a reasonable probability that plaintiff would not obey the law if paroled and that his release would endanger public safety. Denial of parole for these reasons is permissible under the 1987 Regulations. *See Phillips*, 616 F.3d at 582; *Wellington v. Fulwood*, No. 12-0209, 2013 WL 140254, at *3 (D.D.C. Jan. 11, 2013). Plaintiff's ex post facto claim is meritless, and therefore it will be denied.

*B. Double Counting Claim*

Plaintiff deems it "impermissible for the [USPC] to base a decision . . . to deny parole on the same factors that went into formulating the guidelines in the first place." Compl. at 2. The Court understands this contention as a "double counting" claim – that the USPC "uses the same criteria to establish both the parole guidelines and to justify a departure from those guidelines." *Kingsbury v. Fulwood*, 902 F. Supp. 2d 51, 59 (D.D.C. 2012) (quoting *Delong v. Snyder*, No. 5:07–HC–2195, 2008 WL 4510583, at *6 (E.D.N.C. Sept. 29, 2008)).

Plaintiff's prior criminal convictions necessarily are reflected in his salient factor score, and in assessing points for the type of risk plaintiff poses, defendants necessarily take into account the violence attendant to and weapon used in Carrington's murder. However, in deciding that plaintiff is not suitable for parole despite his total point score, defendants relied on the *nature* of plaintiff's criminal conduct. Here, plaintiff's second murder conviction came about when he and his co-defendant in a coordinated fashion shot Carrington in the head. Information set forth in plaintiff's presentence report and in a published District of Columbia Court of Appeals decision offer adequate reasons to suspect plaintiff's involvement in the boys' murders. The USPC is free to consider plaintiff's criminal conduct, even if the conduct has not resulted in criminal charges or conviction of an actual crime. *See U. S. ex rel. Goldberg v. Warden, Allenwood Fed. Prison Camp, Montgomery, Pa.*, 622 F.2d 60, 65 (3d Cir. 1980) (finding that dismissal of criminal charges with prejudice "does not prevent consideration of that conduct by the Parole Commission in weighing all the factors bearing on the nature of the offense and the prisoner's character as well"); *Christopher v. U.S. Bd. of Parole*, 589 F.2d 924, 932 (7th Cir. 1978) (approving Parole Board's use of "hearsay information of criminal activities not supported by convictions" since it is "not limited to consideration of formally adjudicated crimes in determining the likelihood of a prisoner's success, if released on parole."); *Billiteri v. U.S. Bd. of Parole*, 541 F.2d 938, 944 (2d Cir. 1976) ("[T]he Parole Board, which is concerned with all facets of a prisoner's character, make-up and behavior, is, a fortiori, certainly entitled to be fully advised of the contents of the presentence report and to use it in giving an offense severity rating and for such other purposes that it finds necessary and proper."). Similarly, defendants may rely on this information in reaching a decision to depart upward from the rehearing guidelines, such that plaintiff will serve an additional 60 months, rather than the customary 12 months, before his

next rehearing. *Cf. Hall v. Henderson*, 672 A.2d 1047, 1056 (D.C. 1996) (extending time to rehearing based on unusual cruelty to victim). Defendants' departure from the 1987 Regulations, both to deny parole and separately to depart from the rehearing guidelines, is not double counting.

*C. Due Process Claim*

Plaintiff contends that the USPC's decision to deny parole is arbitrary and capricious because the USPC relied on information that was not in the record before it. *See* Compl. at 2-3. The Court treats this claim as one alleging a violation of due process.

"In the context of parole, [the Supreme Court has] held that the procedures required are minimal." *Swarthout v. Cooke*, 562 U.S. 216, 220 (2011). Generally, the prisoner must be "allowed an opportunity to be heard and was provided a statement of the reasons why parole was denied." *Id*. (citing *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 16 (1979)). The D.C. Circuit has found that a parole revocation decision "either totally lacking in evidentiary support or . . . so irrational as to be fundamentally unfair . . . indeed would violate due process." *Duckett v. Quick*, 282 F.3d 844, 847 (D.C. Cir. 2002) (citations omitted). If the court were to apply this standard in the context of a parole release decision, as did the court in *Gambrell v. Fulwood*, 950 F. Supp. 2d 109, 117 (D.D.C. 2013), *aff'd*, 612 F. App'x 3 (D.C. Cir. 2015), plaintiff's due process claim fails.

Plaintiff proceeds as if he is entitled to parole, yet "parole is never '*required* [even if the USPC] determines that the necessary prerequisites exist.'" *Ellis v. District of Columbia*, 84 F.3d 1413, 1420 (D.C. Cir. 1996) (quoting *Bd. of Pardons v. Allen*, 482 U.S. 369, 376 (1987)) (emphasis in original). Defendants are not obliged to "render a decision based on a strict application of the system set forth in the 1987 Regulations." *Bailey v. Fulwood*, 793 F.3d 127,

132 (D.C. Cir. 2015) (citing *McRae v. Hyman*, 667 A.2d 1356 (D.C. 1995)), *cert. denied sub nom. Bailey v. Smoot*, No. 15-1217, 2016 WL 1242951 (U.S. Oct. 6, 2016). Rather, they need only comply with the governing statute by determining whether plaintiff can "live and remain at liberty without violating the law such that release would be compatible with the welfare of society." *Id*. (citing *McRae*, 667 A.2d at 1361); *see* D.C. Code § 24-404(a). Defendants have answered the question in the negative.

## III. CONCLUSION

Plaintiff's complaint fails to state claims upon which relief can be granted and, accordingly, Defendants' Motion to Dismiss will be granted. An Order is issued separately.

/s/
RUDOLPH CONTRERAS
United States District Judge

DATE: October 31, 2016